IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BOOKS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 05-2201 |
| Commissioner of Social Security | : | |

## REPORT AND RECOMMENDATION

THOMAS J. RUETER                                      November 22, 2005
United States Magistrate Judge

      Plaintiff, Robert Books, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").

      Each party filed a motion for summary judgment.  For the reasons set forth below, this court recommends that plaintiff's motion for summary judgment be DENIED and the Commissioner's motion for summary judgment be GRANTED.

## I.    FACTUAL AND PROCEDURAL HISTORY

      Plaintiff filed an application for DIB on December 18, 2003, alleging disability from February 10, 2003 due to problems with his arms and wrists.  (R. 43-45, 48-49.)  The claim was denied initially and a request for hearing was filed.  (R. 29-33.)  A hearing was held on July 1, 2004 before Administrative Law Judge ("ALJ") Christine McCafferty.  (R. 99-119.)  Plaintiff, represented by counsel, appeared and testified.  Id.  A vocational expert ("VE") also appeared but did not testify.  Id.  In a decision dated January 14, 2005, the ALJ found that plaintiff was not disabled under the Act.  (R. 15-21.)  The ALJ made the following findings:

1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.   The claimant's bilateral tenosynovitis of the extension tendons of the forearms are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant retains the residual functional capacity to perform a full range of sedentary work.

7.   The claimant is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).

8.   The claimant is a "younger individual" (20 C.F.R. § 404.1563).

9.   The claimant has a "high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).

11.   The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 C.F.R. § 404.1567).

12.   Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.28, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.   The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(g)).

(R. 20-21.)

On April 6, 2005 the Appeals Council denied plaintiff's request for review.   (R. 3-5.)  The ALJ's decision thereby became the final decision of the Commissioner.  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117.  This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)).  As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986), cert. denied, 482 U.S. 905 (1987).

To be eligible for DIB, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 404.1520.

III.    **BACKGROUND**

    A.    **Testimony of Plaintiff, July 1, 2004**

        Plaintiff, represented by counsel, appeared and testified at the administrative hearing.  (R. 106-19.)  At the time of the hearing, plaintiff was one week shy of his thirty-seventh birthday, single, and lived in an apartment with his brother.  (R. 106.)  Plaintiff had a high school education.  (R. 107.)  Plaintiff lost his driver's license in 1999 because of a driving under the influence conviction, and did not drive.  Id.

        Until October 2002, plaintiff worked two jobs.  Id.  He worked full time at Verizon for eleven months performing shipping and receiving duties.  (R. 107-08.)  Plaintiff was laid off from Verizon in October, 2002.  (R. 107.)  Plaintiff continued to work his second job at a company identified as "Gotham," also performing shipping and receiving duties, until March, 2003.  (R. 107-08.)  Before Verizon, plaintiff worked for nine months at Great Atlantic Graphics also doing shipping and receiving.  (R. 108.)  In the fifteen years prior to the hearing, all of the jobs plaintiff worked involved the duties of shipping and receiving.  Id.

        Plaintiff testified that he cannot work because of pain and swelling and "lumps" in his joints.  Id.  Although plaintiff's testimony was unclear, it appears that plaintiff suffered swelling which began in his ankles and legs and turned into lumps.  (R. 109.)  A lump appeared in the "bending part of [plaintiff's] left leg," which was very painful and caused plaintiff to go to the emergency room.  Id.  The problem in plaintiff's left leg "disappeared" and then reappeared first in plaintiff's spine and then in his arms.  (R. 110.)  The ALJ asked plaintiff whether the lumps, swelling and pain appear only in his arms.  Id.  Plaintiff responded as follows:

> Well, my ankles always swell now.  I mean if I . . . do any walking.  And the arms . . . sometimes not doing anything.  I mean it's sitting, sitting gets the base of the spine and then when I'm sitting down, within an hour or two I like lock up when I go to get up.  I have to . . . lay down, just trying to stretch and sometimes . . . like the lump will appear and it's . . . like I'm dealing with two different things here.  Like . . . deal with . . . little balls of lumps and . . . then the swelling.

Id.  Plaintiff testified that the lump that appears in his spine comes and goes.  Id.  Plaintiff reported no swelling in his spine.  Id.  Plaintiff stated that there was no time during a month when he has no swelling or lumps.  (R. 111-12.)  However, plaintiff admitted that at the time of the hearing, he had no swelling or lumps.  Id.  Plaintiff explained that the swelling and lumps come and go during the day and that his knees and ankles swell daily.  (R. 112.)

Plaintiff described his latest symptom as the appearance of a lump on his right temple accompanied by swelling of his head and headaches.  (R. 110-11.)  Plaintiff testified that his father has been diagnosed with lupus.  (R. 113.)

On a typical day, plaintiff testified that he rises between six and eight o'clock in the morning.  (R. 113.)  It takes him ten to forty minutes to "even really get functioning to . . . even get near the . . . bathroom."  (R. 113-14.)  The plaintiff does stretches and "cracking."  (R. 114.)  Generally, plaintiff will feel fine for about three to four hours, until approximately 11:00 a.m., and then he needs to lie down because of excruciating pain in his arms and back.  Id.  He will lie down until approximately five or six o'clock in the evening.  Id.  Plaintiff explained that his condition is different every day.  Id.  Some days he will feel fine until approximately 2:00 in the afternoon, but then must nap and will wake up "swelled."  Id.  Plaintiff reported that he nods off during the day due to exhaustion and pain.  (R. 116.)  Plaintiff testified that he sleeps for approximately two to three hours every three to four hours during the day.  Id.  Plaintiff also

testified that in the months immediately prior to the hearing, he began to experience heat in his legs.  (R. 114.)

Plaintiff's brother does the cooking, the laundry and the other household chores. (R. 115.)  Plaintiff reports no hobbies and testified that he does nothing socially or for fun; he does not go out.  Id.

Plaintiff takes the following medication:  Lodine, Bextra, Advil and aspirin.  (R. 117.)  Plaintiff takes the Bextra when his pain flares up and some days will take two or three of them at a time.  Id.  The medication helps plaintiff's pain, but not for  "really long."  Id.

**B.**     **Medical Evidence**

**1.**     **Robert J. Cabry, Jr., M.D.**

The record contains treatment notes from Dr. Cabry of Sports Medicine Associates, Ltd.  On February 21, 2003, plaintiff presented to Dr. Cabry complaining of pain and bruising of the medial portion of the left inner thigh.  (R. 81.)  Plaintiff recollected no inciting incident or trauma.  Id.  Soaking the leg in water provided some relief.  Id.  On examination, plaintiff was in not acute distress, ambulated without a limp, and had full range of motion in the lumbar spine, hips, knees and ankles without pain.  Id.  Dr. Cabry diagnosed plaintiff with a "superficial phlebitis" of the left thigh and directed plaintiff to continue to take aspirin, use warm compresses, and an ACE wrap for compression.  Id.

Plaintiff next consulted with Dr. Cabry on December 9, 2003.  (R. 80.)  At that time, plaintiff complained of bilateral arm pain and crepitus[1] on motion of the wrists ongoing for

_____

[1]     "Crepitus" of the joints is defined as "the grating sensation caused by the rubbing together of the dry synovial surfaces of joints."  Dorland's Medical Dictionary at 433 (30th ed. 2003) ("Dorland's").

7

a couple of months.  Id.  He reported pain on extension of the wrists with some crepitus along the forearm.  Id.  He had no other joint complaints and did not complain about his legs.  Id.  Plaintiff was recently released from prison and did not recall any event occurring in prison which brought on his symptoms.  Id.

On examination, Dr. Cabry found that plaintiff was in "moderate distress secondary to pain."  Id.  Examination of plaintiff's upper extremities was "essentially normal except for crepitus along the extensor tendons of the forearm with motion of the wrist."  Id.  Plaintiff experienced a loss of range of motion in those areas secondary to pain, but retained full range of motion in the elbows and shoulders.  Id.

Dr. Cabry diagnosed bilateral tenosynovitis[2] of the exterior tendons of the forearms.  Id.  Dr. Cabry directed plaintiff to wear wrist immobilizers for two weeks, after which he was to remove the immobilizers and "start working on heat and stretch[ing]."  Id.  Dr. Cabry also prescribed Lodine twice a day.  Id.

On February 13, 2004, plaintiff reported improvement in his left arm but noted swelling in the right forearm with a "diffuse erythematous rash that is macular."  (R. 92.)  The rash fluctuated between the forearms and also had appeared on plaintiff's ankles and left knee.  Id.  On examination, Dr. Cabry noted swelling in the right forearm with the rash, and some soft tissue swelling in the ankles without rash.  Id.  Plaintiff had no pain with wrist extension or flexion, and no gross weakness in the upper or lower extremities.  Id.  Dr. Cabry ordered laboratory studies to rule out connective tissue disease.  Id.

_____

[2]  "Tenosynovitis" is defined as "inflammation of a tendon sheath."  Dorland's at 1865.

8

On March 5, 2004, plaintiff reported that the rash resolved spontaneously and, while it reappears in other locations, it dissipates quickly.  (R. 93.)  He also reported improvement in his achy joints with Bextra.  Id.  Plaintiff's laboratory tests revealed that he had a "very weakly positive ANA."  Id.  Given this laboratory result and his family history of lupus, Dr. Cabry referred plaintiff to a rheumatologist.  Id.

At some point in time, presumably in November 2004, Dr. Cabry completed a disability form indicating that plaintiff was disabled for thirty days, from November 1, 2004 through November 30, 2004, due to multiple joint pains.  (R. 83.)  This form is undated.

2.     **Preethi Thomas, M.D.**

The record contains treatment notes from Dr. Thomas.  As of the date of the hearing, Dr. Thomas had seen plaintiff on one occasion, on April 26, 2004.  (R. 90-91, 95-98.) In a letter to Dr. Cabry dated April 26, 2004, Dr. Thomas stated that her physical examination of plaintiff revealed no heat, crepitus or effusion in any joints, and range of motion was well preserved, with normal stability and no dislocation.  (R. 96.)  No rashes, ulcers, nodules, scherosis or erythema were present.  Id.  Dr. Thomas concluded as follows:

> Clinical exam and review of systems did not reveal any evidence of systemic disorder or connective tissue disorder at this time.  I do not see any deformities, or any signs of any inflammation.  I did not see any swelling of the joints, or any skin problems, or lumps over his body as he described, at this time.  There were no fibromyalgia tender points either on exam.

> At this time, he does not seem to have any rheumatological problems.  Lupus is a rare possibility, at this time, because of lack of any joint involvement, any oral or nasal ulcers, or malar rash.  We may need to do serologies at this time, for a more definite diagnosis. . . .  The patient was told that a positive ANA by itself, does not constitute systemic lupus erythematosus and again, given his family history of lupus he may have auto-antibodies but just the presence of these antibodies is not enough to make a diagnosis of the disease.

(R. 96-97.)

Although the ALJ left the record open for plaintiff to submit updated medical records from Dr. Thomas (R. 119), the record contains no other medical records.  In his letter to the Appeals Council, plaintiff's attorney does not reference additional medical records.  (R. 6-7.)

## IV.   DISCUSSION

Plaintiff raises several arguments in his motion for summary judgment.  Plaintiff asserts that the ALJ erred when she (1) concluded that plaintiff's subjective complaints were not totally credible; (2) concluded that plaintiff suffered no nonexertional limitations; and (3) relied on Medical-Vocational Rule 201.28 and did not question the Vocational Expert.  The Commissioner contends that substantial evidence supports the ALJ's determinations.

### A.   Credibility Assessment

Plaintiff contends that the ALJ erred when she concluded that plaintiff's subjective allegations were not totally credible.  (Pl.'s Br. Supp. Summ. J. at 10-11.)  Plaintiff argues that his complaints of limitations are supported by the objective medical evidence establishing a diagnosis of bilateral tenosynovitis of the extensor tendons in the forearms, and diffuse joint and muscle pain.  Id.  The Commissioner contends that substantial evidence supports the ALJ's credibility finding.  (Def.'s Br. Supp. Summ. J. at 13-16.)

It is within the province of the ALJ to evaluate the credibility of the claimant.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  The ALJ is directed by 20 C.F.R. § 404.1529 to engage in a two step process when considering a claimant's subjective complaints.  In general, section 404.1529(a) provides that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can

reasonably be accepted as consistent with the objective medical evidence, and other evidence."
The regulations caution, however, that

> statements about your pain or other symptoms will not alone establish that you are
> disabled; there must be medical signs and laboratory findings which show that you
> have a medical impairment(s) which could reasonably be expected to produce the
> pain or other symptoms alleged and which, when considered with all of the other
> evidence (including statements about the intensity and persistence of your pain or
> other symptoms which may reasonably be accepted as consistent with the medical
> signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a). The regulations emphasize that "[m]edical signs and laboratory

findings, established by medically acceptable clinical or laboratory diagnostic techniques, must

show the existence of a medical impairment(s) which results from anatomical, physiological, or

psychological abnormalities and which could reasonably be expected to produce the pain or other

symptoms alleged." 20 C.F.R. § 404.1529(b). "Once an ALJ concludes that a medical

impairment that could reasonably cause the alleged symptoms exists, he . . . must evaluate the

intensity and persistence of the pain or symptom, and the extent to which it affects the

individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

A claimant's testimony regarding subjective complaints is entitled to great weight,

particularly when supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d

403, 409 (3d Cir. 1979). See also Burns, 312 F.2d at 129 (subjective complaints must be given

"serious consideration") (citation omitted). An ALJ may disregard subjective complaints when

contrary evidence exists in the record. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).

The ALJ must, however, provide his or her reasons for doing so. Burnett v. Comm'r Soc. Sec.

Admin., 220 F.3d 112, 122 (3d Cir. 2000). See also Matullo v. Bowen, 926 F.2d 240 245 (3d Cir.

1990) (same).

In addition to objective medical evidence, the ALJ may consider the following factors in evaluating a claimant's credibility:  (1) daily activities; (2) location, duration, frequency, and intensity of the symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of pain medication; (5) treatment, other than medication, received; (6) measures other than treatment used to alleviate the symptoms; and (7) any other factors concerning functional limitations and restrictions due to the symptoms.  20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p.  The ALJ considered many of these factors when she addressed plaintiff's subjective complaints in her decision.

In her decision, the ALJ noted plaintiff's minimal medical records (R. 17), and stated as follows regarding plaintiff's subjective complaints:

> Having reviewed the record in its entirety, the undersigned concludes that the claimant has underlying medically determinable impairments that could reasonably be expected to result in some of the symptoms as alleged.  The undersigned has reservations, however, as to whether the claimant's assertions concerning his impairments and their impact on his condition can be considered fully credible.  The record fails to provide any objective medical evidence that the claimant's impairments are as severe as the hearing testimony indicates.
>
> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the reports of the treating and examining practitioner's and the findings made on examination.  The record fails to show that the claimant had been hospitalized for his impairments.  The record fails to show that the claimant had received significant active care other than conservative routine maintenance, and there have been no significant increase or changes in prescribed medication reflective of an uncontrolled condition.  Dr. Thomas reported that his musculoskeletal examination revealed that the claimant's gait was normal.  His digits were normal.  There was no heat, crepitus or effusion in any joints.  His range of motion was well preserved with normal stability and no dislocation.  (Exhibit 6F page 3).
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  The

claimant reported on January 7, 2004, that he is able to take care of his personal hygiene, prepare meals, go grocery shopping and dress himself.  (Exhibit 4E).

(R. 18.)

The ALJ correctly points out that plaintiff's statements regarding his impairments and their impact on his ability to work are not credible in light of the medical records of his treating physicians.  Id.  As quoted above, the ALJ noted Dr. Thomas' findings, only two to three months prior to the administrative hearing, that  plaintiff had normal digits and gait.  Id.  His range of motion was well preserved with normal stability and no dislocation.  Id.  Dr. Thomas found no heat, crepitus or effusion in any joints.  Id.  Additionally, at the time Dr. Thomas examined plaintiff, the physician found no swelling, skin problems, or lumps over plaintiff's body.  (R. 96.)  This objective medical finding is inconsistent with plaintiff's testimony that there was never a time when he had no swelling or lumps.  (R. 111-12.)  Moreover, plaintiff's own testimony that at the time of the hearing he had no swelling or lumps contradicted his earlier testimony that he always had swelling or lumps.[3]  Id.

Moreover, the ALJ did not totally disregard plaintiff's testimony and his subjective complaints of limitations.  The ALJ accommodated plaintiff's subjective complaints when she limited plaintiff to sedentary work.  Id.

For the foregoing reasons, this court finds that substantial evidence supports the conclusion of the ALJ that plaintiff's subjective complaints were "not entirely credible."  (R. 18.)

---

[3]     In reaching her conclusions, the ALJ specifically considered plaintiff's testimony at the administrative hearing and Dr. Thomas' written report.  (R. 18 (citing Exhibit 6F).)

B.      **Nonexertional Limitations**

Plaintiff next claims that the ALJ's determination that plaintiff suffered no nonexertional limitations is not supported by substantial evidence.  (Pl.'s Br. Supp. Summ. J. at 7-8.)  The Commissioner contends that substantial evidence supports the ALJ's findings.  (Def.'s Br. Supp. Summ. J. at 11-12.)

The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") "to perform substantially all of the full range of sedentary work."  (R. 20.)  The ALJ also found that plaintiff's "capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations."  (R. 21.)

In his brief, plaintiff cites to general medical literature regarding tenosynovitis. (Pl.'s Br. Supp. Summ. J. at 7-8.)  Plaintiff contends that, because of his diagnosis of tenosynovitis,  he "<u>would</u> <u>be</u> <u>expected</u> to . . . [have] difficulties with reaching, handling, and fingering," and "<u>would</u> <u>be</u> <u>expected</u> to experience significant difficulties using his hands and fingers for repetitive hand-finger actions."  <u>Id.</u> at 7, 9 (emphasis added).  Plaintiff further argues that with tenosynovitis, "[t]he involved tendons are <u>usually</u> painful on motion; their sheaths <u>may</u> accumulate fluid and be visibly swollen or <u>may</u> remain dry but cause friction . . . [a]long the tendon, localized tenderness of <u>variable</u> severity is present, it <u>may</u> be severe and associated with disabling pain on movement."  <u>Id.</u> at 7-8 (quotations and citations omitted) (emphasis added). Plaintiff's statements as to limitations he "would be expected" to experience, do not prove that he indeed suffers from those limitations.  Nor is the non-specific, general medical information evidence in this case related specifically to plaintiff and his condition.

14

Rather, in plaintiff's specific case, substantial evidence supports the ALJ's conclusion that plaintiff does not suffer from nonexertional limitations.  The ALJ specifically cited to and carefully considered the report of Dr. Thomas, plaintiff's treating rheumatologist. (R. 17 (citing Exhibit 6F).)  This report was dated April 26, 2004, shortly before plaintiff's administrative hearing on July 1, 2004.  (R. 99.)  In her report, Dr. Thomas stated that her examination of plaintiff "did not reveal any evidence of systemic disorder, or connective tissue disorder."  (R. 96.)  Dr. Thomas observed no swelling of the joints, inflammation, skin problems, lumps, or fibromyalgia tender points.  Id.  Of particular note, Dr. Thomas found normal muscle strength, gait and digits, and well preserved range of motion.  (R. 18, 96.)  She concluded that plaintiff did not "seem to have any rheumatologic problems," and that lupus was a "rare possibility."  (R. 97.)

The ALJ carefully considered plaintiff's subjective complaints and concluded they were not entirely credible.  As discussed above, this court found that substantial evidence supports the ALJ's conclusions regarding plaintiff's subjective complaints.  Accordingly, such subjective complaints are not substantial evidence supporting plaintiff's claim of nonexertional limitations.

For all the above reasons, the court finds that substantial evidence supports the ALJ's determination that plaintiff does not have any nonexertional limitations.

### C.     Medical-Vocational Rule 201.28

Plaintiff argues that the ALJ impermissibly applied Medical-Vocational Rule 201.28 to determine plaintiff was disabled, rather than posing questions to the Vocational Expert in attendance at the hearing.  (Pl.'s Br. Supp. Summ. J. at 8-10.)  Plaintiff urges that Rule 201.28

15

was inapplicable because plaintiff "demonstrated significant nonexertional limitations related to his ability to use his hands for basic functions." Id. at 8. The Commissioner contends that the ALJ properly consulted Rule 201.28. (Def.'s Br. Supp. Summ. J. at 9-11.)

The crux of plaintiff's argument is that plaintiff suffered from nonexertional limitations. The ALJ found otherwise. Here, the ALJ determined that plaintiff retained the RFC to perform the exertional demands of substantially all of the full range of sedentary work. (R. 20.) She further concluded that plaintiff's capacity for sedentary work was not "compromised by any nonexertional limitations." (R. 21.) For the reasons stated above, this court found that substantial evidence supports the ALJ's conclusion that plaintiff did not have any nonexertional limitations. Table No. 1 applies to individuals, like plaintiff, with a maximum sustained work capability limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, §§ 200, 201 and Table No. 1. Plaintiff meets all of the criteria of Rule 201.28 in terms of RFC, age, education, and previous work experience. Hence, for all these reasons, application of Rule 201.28 was appropriate, see 20 C.F.R. §§ 404.1569, 404.1569a, and directed a conclusion of "not disabled." See Medical-Vocational Rule 201.28.

Plaintiff also argues that the "ALJ's failure to ask the VE how plaintiff's impaired bilateral manual dexterity affected his ability to handle the demands of unskilled sedentary work" was error. (Pl.'s Br. Supp. Summ. J. at 10.) The law is clear that the ALJ must include in a hypothetical to the VE all of a claimant's limitations which are supported by the medical record." Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). See also Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004) (hypothetical to VE must reflect all claimant's impairments supported by the record).

16

Here, the ALJ concluded that plaintiff did not suffer from nonexertional limitations.  Plaintiff's claim that he suffers from impaired bilateral manual dexterity is contrary to the ALJ's determination.  Substantial evidence supports the ALJ's conclusion.  Accordingly, the ALJ committed no error when she did not ask the VE whether the nonexistent nonexertional limitations would affect plaintiff's ability to perform sedentary work.

**V.**     **CONCLUSION**

Under the substantial evidence test, "the question is not whether we would arrive at the same decision; it is whether there is substantial evidence supporting the Commissioner's Decision."  Donatelli v. Barnhart, 127 Fed. Appx. 626, 630 (3d Cir. 2005) (not precedential) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1990)).  For all the above reasons, this court finds that substantial evidence supports the ALJ's finding that plaintiff was not disabled under the Act.  Accordingly, the court makes the following:

**R E C O M M E N D A T I O N**

AND NOW, this 22nd day of November, 2005, upon consideration of plaintiff's motion for summary judgment, and defendant's motion for summary judgment, it is respectfully recommended that plaintiff's motion for summary judgment be DENIED, defendant's motion for summary judgment be GRANTED, and judgment be entered in favor of defendant.

BY THE COURT:

_____

THOMAS J. RUETER
United States Magistrate Judge

17